IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

---

| | | |
|---|---|---|
| **IN RE: PELLA CORPORATION** | : | **MDL Docket No. 2514** |
| **ARCHITECT AND DESIGNER SERIES** | : | **ALL CASES** |
| **WINDOWS MARKETING, SALES** | : | |
| **PRACTICES AND PRODUCTS LIABILITY** | : | |
| **LITIGATION** | : | |

---

### CASE MANAGEMENT ORDER NO. 2:
### AGREED PROTOCOL RELATING TO THE PRODUCTION OF ALL DOCUMENTS, RECORDS, AND ELECTRONICALLY STORED INFORMATION

This Order applies to those actions transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to its Order of February 14, 2014, as well as all related actions originally filed in this Court or transferred or removed to this Court. This Order shall also govern the practice and procedure in any tag-along actions transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to Rule 7.1 of the Rules of Procedure of that Panel subsequent to the filing of the final transfer Order by the Clerk of this Court and any related actions subsequently filed in this Court or otherwise transferred or removed to this Court.

The Parties agree that, during the pendency of the above captioned litigation, they will comply with their duties to preserve all documents, including electronically stored information ("ESI"), that may be relevant to the Litigation. Pursuant to Fed. R. Civ. P. 26(b)(1), the relevant information to be preserved need not be admissible at trial if the discovery of the documents and ESI appear reasonably calculated to lead to the discovery of admissible evidence. This duty to preserve extends to all documents, records and ESI in the possession, custody, and control of the Parties to the Litigation. This may include agents or third-party representatives reasonably expected to possess materials anticipated to be the subject of discovery in the Litigation. The

Parties agree that nothing in this Stipulation is intended to enlarge or diminish any obligations imposed by the Federal Rules of Civil Procedure.

Pursuant to this Agreement reached between the Plaintiffs and Defendant herein, this Court enters the following Order concerning the production of All Documents, Records, and Electronically Stored Information in these proceedings as follows:

## I.     SCOPE OF ORDER

A.     <u>General</u>. This Order governs the preservation and production of Records (defined below) by all parties to these proceedings, whether they currently are involved or become so in the future. The parties agree to meet and confer to discuss requested variances from and/or modifications to provisions of this Order. All disclosures and productions made pursuant to this Order are also subject to all other orders entered by this Court for this Litigation.

B.     <u>Limitations and No-Waiver</u>. The Parties and their attorneys do not intend by this Order to waive their rights to the confidentiality, attorney-client privilege or attorney-work product protection as to any Records addressed in this Order. All Parties preserve their attorney-client privileges, work product protections, and other relevant privileges, and there is no intent by the Order, or the production of Records pursuant to the Order, to in any way waive or weaken these privileges. Nothing in this Order shall address, limit, or determine the relevance, discoverability or admission into evidence of any Record, regardless of whether the Record is required to be preserved pursuant to the terms of this Order. The Parties do not waive any objection as to the production, discoverability, privilege, work-product or confidentiality of any Record under this Order.

C.     <u>Costs</u>. This Order does not address the Parties' respective responsibilities for the costs of retrieving or producing Records that may be subject to discovery. Each Party reserves

the right to object to producing Records because of undue cost or burden and to request the Court to perform a cost-shifting analysis to determine if the other Party should bear some or all of the costs.  Any preservation obligations arising subsequent to this Order in any court or in any other jurisdiction will not abrogate or reduce any of the preservation obligations set forth in this Order.

        D.      <u>Discovery Efforts/Accessible ESI.</u>  Each party will conduct a reasonable search of those reasonably accessible sources in which it has reason to believe relevant Records responsive to the opposing party's discovery requests will be found.  In accordance with Fed.R.Civ.P 26(b)(2)(B) the parties need not produce Records that are not reasonably accessible, but each party will identify all information that it contends is not reasonably accessible. If the requesting party seeks information previously identified as not reasonably accessible, the parties agree to meet and confer in a good faith attempt to reach agreement regarding scope of production.

## II.     DEFINITIONS

        A.      "<u>Parties</u>" shall mean all named Plaintiffs in any of the actions consolidated into this MDL and Defendant.  "<u>Party</u>" shall mean any individually named Plaintiff or Defendant. Where such a named Plaintiff is an association, its individual members shall be included in the term Party or Parties as used herein. To the extent that additional Parties are transferred, coordinated, or consolidated into this MDL proceeding, this Order shall govern the continuing obligations of such additional Parties regarding preservation of Records on a going-forward basis, beginning on the date that the Transfer Order listing the transferred case is filed in the Clerk's office of the United States District Court of the District of South Carolina.

        B.      "<u>ESI</u>," for the purposes of this Agreement, shall be the same as the term "electronically stored information" in Fed. R. Civ. P. 34.

C.      "Records" shall include "documents", and "electronically stored information" as defined in Federal Rule of Civil Procedure 34(a) that fall within the scope of Federal Rule of Civil Procedure 26(b).

D.      "Preserve" or "Preservation" shall mean taking reasonable steps to prevent the partial or full destruction, significant alteration, deletion, shredding, incineration, wiping, or theft of Records, as well as negligent or intentional handling that would make material incomplete or inaccessible.  "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all Records reasonably anticipated to be subject to discovery under Federal Rules of Civil Procedure 26, 45 and 56(e) in this action.

E.      "Custodian(s)" shall mean a current or former employee, or an agent or third-party representative of Pella Corporation or a named Plaintiff over whom Pella or the named Plaintiff has custody or control pursuant to Federal Rule of Civil Procedure 34.

F.      "Custodial File" shall mean Records produced for a given Custodian consisting of relevant, non-privileged: (1) paper documents that represent that Custodian's individual files (as opposed to departmental or company-wide files), (2) individual user drive assigned to that custodian (relevant to Pella Custodians, the H: drive), (3) non-duplicative Records on the Custodian's Local Hard Drive, and (4) the Custodian's individual email account.

G.      "Local Hard Drive" shall mean any hard drive, external hard drive, jump drive, personal assistant device, tablet, or smart phone that stores data from a personal computer (whether a desktop or laptop) but that is not part of a network.

### III.   IDENTIFICATION OF CUSTODIANS

A.      Within thirty days of entry of this Order, the Parties shall identify a list of Custodians that are most expected to have custody of Records concerning the allegations or

4

defenses of this litigation to each lead and liaison counsel to include a brief description of each identified individual, their title, responsibilities and a brief description of that individual's department. With regard to later production of "Custodial Files," a limit of 30 Custodians for each Party will exist. Any request by either Party for more than 30 Custodial Files will require a showing of good cause and shall be subject to a meet and confer process. If the Parties cannot reach agreement, a motion to compel by the requesting Party will be required.

      B.      Defendant shall also provide current and historic organization charts(s), to the extent available, in order to enable an opposing Party to evaluate its list of Custodians.

      C.      Within sixty (60) days of the entry of this Order, the Parties shall also provide to all other Parties a description of the computer systems and other Record storage systems in their possession, custody, or control that are reasonably likely to contain discoverable Records and are not in the direct possession of any individual Custodians ("Non-Custodial Records"). Defendant shall also provide a listing of IT assets, the deployment and use of IT assets within the company, a written description of backup procedures in place during the last five years, and other information designed to help the other parties understand the types of ESI that it may create, store or transmit that is likely to be relevant or lead to the discovery of relevant evidence related to the issues in this matter. Any Party may make a reasonable request for additional information that may be needed to evaluate such Non-Custodial Records, including an estimate of the cost to access and obtain ESI preserved pursuant to the aforementioned backup procedures. The Parties shall then meet and confer in an effort to agree on which Non-Custodial Records must be Preserved. If the Parties are unable to agree after good faith negotiations, then the Parties must promptly file a submission with the Court setting forth their positions regarding the Preservation of Non-Custodial Records and seek the Court's ruling with respect to the scope of this Order.

      D.     The obligations hereunder are not intended to abrogate or diminish any discovery obligations governed by any other Order or Rule.

## IV.    PRESERVATION MEASURES

      A.     Except as otherwise exempted from this Order, the Parties shall, in good faith, comply with their preservation obligations as set forth in the Federal Rules of Civil Procedure and other law. To this end, the Parties agree to preserve potentially relevant Records under Federal Rule of Civil Procedure 26(b)(1), to the extent such steps have not already been taken, including, but not necessarily limited to, the following: Taking reasonable steps to notify persons under a Party's control who potentially possess Records relevant to the products and claims at issue in this Litigation during the pendency of these actions and instructing such persons to the same. Preservation of Windows will be addressed in a separate Case Management Order.

## V.    FORMAT OF PRODUCTION FOR DOCUMENTS PRODUCED.

      A.    <u>Filtering.</u>

        1. **General.** The parties may filter Records for review and production to the extent necessary using the following techniques:

        2. **Search Terms.** The parties shall use search terms, agreed upon by both parties and attached hereto as Exhibit A, to identify potentially relevant documents within a source prior to review and production.

        3. **Duplicates.** Each party may consider removing duplicative ESI to reduce unnecessary cost of reviewing and producing duplicative ESI. Each party will define duplicates by electronic process based on the SHA-1 or MD5 hash value for each document and provide the

6

name of the custodian who maintained the duplicate in a Duplicate Custodian field as well as the Original File Path for the de-duped document.  Further, no email attachment will be de-duped.

    B.    <u>Form of Production</u>

    **1. Paper**.  Each party will produce paper documents in image format.  The images will be in black-and-white, single-page, 300 DPI, Group IV TIFF images.  Each party will accommodate reasonable requests for production of images in color.  Pursuant to Fed.R.Civ.P. 34 (b)(2)(E) , images of paper documents will  be organized according to the manner in which they were maintained in the ordinary course of business, including, where available, copies of file folders, envelopes, or labels or other identifying marks on the containers in which the documents were maintained, or organized and labeled to correspond to the categories in the document requests.  Document unitization shall be maintained in the imaging process.  OCR text files for paper documents shall be generated in connection with the imaging called for by this section, and each document shall be accompanied by an OCR text file (either page level or document level, as agreed to by the parties).  The parties agree to meet and confer if issues arise concerning the need for one side or the other to produce objective coding for specific documents.

    **2. ESI.**  ESI will be produced as described below.

    a.  **Image and Searchable Text File.**  Except as noted below, each party will produce all ESI in single page, 300 DPI, Group IV TIFF image format, adhering to the specifications noted above for paper documents.  To the extent practicable, each individual document based on an electronic file shall be accompanied by a corresponding text file with text that is extracted from the electronic file.   The exception to this will be redacted documents.  OCR text will be provided for any electronic document that is redacted.

b. **PowerPoints™.** PowerPoint™ slides often contain dynamic content, such as video and audio that is not conducive to static image; therefore, a party should produce PowerPoint™ files in native format.

c. **Spreadsheets.** Excel™ and other types of spreadsheets are often dynamic in nature and may not be conducive to static image; therefore, a party should produce Excel™ and other spreadsheets in their native application. To the extent that print-outs or images of all or part of a spreadsheet were also maintained in static form (e.g. as a PDF attachment or a linked external file), those documents will be produced as static images consistent with the specifications for production of paper. Spreadsheets that contain information that requires redaction can be produced in .tiff image with the parties to confer further if a party believes it need a native copy.

d. **Databases.** A party possessing databases that contain relevant information shall produce the information in the agreed upon format for ESI or in Excel, except where the requesting party can show particularized need for another format. The parties agree to meet and confer in a good faith attempt to resolve any issues raised by the requesting party with respect to any claims of inadequacy of the format of production for a particular database (including but not limited to issues such as whether a database is reasonably accessible; the columns are relevant or non-relevant, etc.).

e. **Conversion Not Practicable.** Due to the nature or complexity of storage of some ESI (e.g., ESI in proprietary applications), conversion to image and searchable text may present significant challenges. In such an instance, the producing party shall identify the data they are unable to convert as well as the reason for the inability, and the parties shall confer over the appropriate solution.

      f.  **Encrypted data/password protected files.**  Certain files may contain encrypted data or be password protected.  Encrypted data and password protected files will be produced only where the key or password can be ascertained after reasonable efforts, provided the party identify the file attributes (directory, size, name, extension, last modification date) of any inaccessible encrypted or password protected files.  Pella will work with technical aids to break passwords that cannot be readily ascertained.

      g.  **Residual, fragmented, damaged, or temporary data.**  Parties reserve the right to not produce the following ESI files provided the party identifies the file attributes (directory, size, name, extension, last modification date) that meet any search term criteria:  data stored in a computer's RAM; any data on unreadable or damaged disc sectors; readable data stored in proprietary format determined to be corrupted by the software capable of rendering the format; and data that would require forensic reconstruction.

      h.  **Image Not Readable.**  Where TIFF images of certain documents are not readable due to processing constraints, the parties may request their production in native or other appropriate format.

      i.  **Metadata.**  For produced ESI, the parties agree to provide the metadata set forth in Exhibit B, if available, in an appropriate load file.

      j.  **Organization of Production.**  Images will be placed on CD/DVD(s) or external hard drive and transmitted to counsel.  Each image will be assigned a production number and for produced ESI, an image cross-reference file in .TXT format indicating the begin/end document boundaries that will be provided as part of each production.

    C.  <u>Appearance</u>.  Subject to appropriate redaction, each document's electronic image will convey the same information and image as the original document, including formatting,

such as bolding, highlighting, font size, italics. Documents will be produced in black and white with the exception of photographs which will be produced in color. Documents that present imaging or formatting problems will be identified and the Parties will meet and confer in an attempt to resolve the problems. After production, a Party may request that a document be produced in color at which time the Parties may meet and confer about such production. The Parties shall honor reasonable and specific requests for the production of color image(s) of such documents.

      D.      <u>ESI Processing – Dates</u>:  All documents shall be processed so as to show the date time in Central Standard Time.

## VI.    GENERAL PROVISIONS

      A.      Any practice or procedure set forth herein may be varied by prior written agreement of the Parties.

      B.      Regardless of the foregoing, the Parties are under a continuing obligation to produce identified responsive, non-privileged documents and to identify sources of potentially discoverable materials consistent with their obligations under Federal Rules of Procedure.

## VII.    IMPLEMENTATION AND MODIFICATION OF ORDER

      A.      Each Party shall communicate the existence and substance of the obligation to Preserve documents to those employees responsible for carrying out the Party's obligations hereunder and maintain a record of to whom the existence and substance of this information has been communicated. Such communications will be re-issued every six (6) months to potential Custodians to ensure compliance with these instructions on a going-forward basis.

      B.      With respect to individuals on the list of Custodians identified in Section III.A., at such times as such Custodians are no longer employed by or associated with a Party, retire a data

source, move from one department to another, or any similar situation which may result in a Custodian's loss of control of the Documents, the Party shall take steps to adequately preserve the data if relevant to the Litigation.

      C.      The Parties are directed to meet and confer to resolve questions as to what Records are required to be Preserved under this Order. Counsel for the Parties may stipulate and agree in writing that specific Records need or need not be Preserved. Any dispute pursuant to this Paragraph shall be resolved by the Court or any appointed Special Master. The Parties agree to meet and confer regarding the following items in advance of impacted productions:

           1.      Whether the Email Property metadata field is able to be produced

           2.      Certain technical specifications for productions:

                (a)      Hard copy document utilization

                (b)      Microsoft, Lotus, or other "Auto" features or macros

                (c)      Embedded objects

                (d)      Compressed Files

                (e)      Load file organization

      D.      In the event that any Party's data management systems are such as to make any term of this Order unreasonably burdensome or impossible for that Party to comply with, counsel for that Party and opposing counsel may negotiate and agree in writing to any reasonable exception to or modification of this Order and a copy of such written agreement shall be provided to the Court promptly. If such negotiation does not lead to an agreed upon modification, the Party may apply to this Court for an exception to or modification of this Order.

E. The Parties agree to meet and confer in the future if the Litigation advances to the stage where any Party believes that this Order should be modified. Any Party believing this Order should be modified in any way may file a motion with the Court.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 28, 2014**
**Charleston, South Carolina**

# Exhibit A

## INITIAL SEARCH TERM

"Architect*"
"Designer*"

And then the following search terms will be applied across the results of the Initial Search Terms

## SEARCH TERMS

"AAMA"
"Adjust*"
"air infiltration"
"aluminum clad*"
"ASTM"
"Backdam" or "Back dam" or "end dam"
"building code*"
"Certif*"
"claim*"
"Code 06"
"complaint*"
"Condensat*"
"defect*"
"defect*" and "clad"
"discontinuous gasket"
"Enhance*"
"fail*"
fail w/10 clad*
"Failure Mode and Effects Analysis"
"FMEA"
"fin pile"
"Gasket*"
Gap /s gasket
"glazing seal*"
"glazing pocket"
"Hallmark"
"Hardware" or "crank"
"IGU separate*"
"industry standard*"
"instruction*"
"issue*"
"leak*"
"litigation"
"nailing fin"
"nailing flange"

14

"Physical damage"
"Plasticizer*"
"pressure equalization"
"problem*"
"quality"
"recessed seal*"
"Regression Analysis"
"return"
"Returns and Allowances" or "Returns & Allowances" or return* w/3 allow*
"R&A*"
"rot"
"sill extrusion"
"seal fail*"
"seal*"
"sealant squeeze out"
"Service"
"specification*"
"Stain*"
"smart sash"
"sweep gasket"
"training"
"trough"
Vent* w/3 hole*
"warrant*"
"WDMA"
"Wick*"
(wood OR window OR frame OR sash) w/10 degrad*
(wood OR window OR frame OR sash) w/10 deter*
(wood OR window OR frame OR sash) w/10 rot*
(wood OR window OR frame OR sash) w/10 stain*
(water OR moisture) w/10 damag*
(water OR moisture) w/10 infiltrat*
(water OR mosture) w/10 penetrat*
Deni* w/10 claim*
Replac* w/10 (distract* OR unit* OR product*)
Report w/10 (leak* OR damage*)
seal* w/10 fail*
Test* w/10 (lab* OR field)
Water w/10 test*
Water-repel* w/10 fail*
Wood w/10 preservat*
Wood w/10 treat*

## Exhibit B

**The Parties shall include in any production of ESI each of the following metadata fields, to the extent available, and to the extent that they can be extracted using an automated process.  Manual population of metadata fields by a producing Party shall not be required.**

| **Coding Field** | **Description** |
| --- | --- |
| BegBates; EndBates | The beginning and ending Bates numbers for the document at issue. |
| BegAttach; EndAttach | The beginning and ending Bates numbers of the collection to which the parent document and any attachments thereto are associated (i.e., for an email that is bates stamped TPCL0001 - TPCL0002, with two attachments bates stamped TPCL0003 - TPCL0004 and TPCL0005 - TPCL0008, the BegAttach and EndAttach for all three documents would be TPCL0001 - TPCL0008). |
| BegFamily; EndFamily (or whatever similar metadata is created) | Beginning and ending Bates # of a "family" or related documents |
| File name | Original file name of the item of data |
| Link to Native | File path linking to the native item referenced. |
| DocCreate | The internal metadata, if any, reflecting the date the document was created. |

16

| **Coding Field** | **Description** |
|---|---|
| DocDate | The last modified date of the document, formatted as follows: MM/DD/YYYY, with leading zeros as appropriate (e.g., 03/01/2006). For emails, the field will reflect the date the email was sent; for other documents, the field will reflect the last date on which the document was last modified. |
| File System Create Date | File created date as maintained by the file system from which the document was collected. |
| File System Modified Date | File modified date as maintained by the file system from which the document was collected |
| DocType | The type of document (e.g., email, Microsoft Word 2000, Microsoft Excel, etc.). |
| Document Title | The title of the document, if any. |
| AuthorName | The author(s) of a document. |
| LastAuthorName | The last author(s) of a document. |
| From | The sender of a document. |
| To | The recipient(s) of a document. |
| CC | The person(s) who received copies of a document. |
| BCC | The person(s) who received blind copies of a document. |
| Subject | Subject line of email message or the re line of a document |
| Custodian/Source | The name of the individual whose electronic or hard-copy custodial file contained the document at issue or the corporate file store from which the file was collected. |
| Importance | For Outlook emails, "High," "Low," or "Normal." |
| Sensitivity | For Outlook emails, "Normal," "Private," "Personal," or "Confidential." |

17

| Coding Field | Description |
| --- | --- |
| Pages | The number of pages in a document. |
| MD5 Hash | Hash value used de-duplication purposes. |
| Removed From | Concatenated field: for standalone ESI documents list all original file names, file paths and file system created date and modified date of items removed for de-duplication purposes; for messaging files list the source container file name and the full folder location of each duplicate within its source container. |
| File Extension | The digit extension of the ESI - .msg, .doc, .xlsx .pptx, etc. |
| Attachment Count | Number of attachments |

| **Coding Field** | **Description** |
|---|---|
| Sent Date | System data |
| Sent Time | System data |
| Delivered/Received | System data |
| Date Delivered/Received Time | System data |
| GUID /Message ID | Unique ID created by email system for this message |
| ID of original message REPLIED to or FORWARDED | Included in the metadata of REPLY or FORWARD items |
| Agent ID | If the item was created by someone on behalf of the email box owner, ID of the agent who created/sent the item |
| Importance Ranking | System data |
| Follow up flags | System data |
| Status as READ or UNREAD | System data |
| Original File/Path | File/Path of original location of item prior to litigation hold or other litigation treatment (the original location of the item in the ordinary course of business).  This should include structure inside of an email box or structure inside of any PST container from which the email was taken. |

19